**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JULIE PAROLA** | : |
| **PLAINTIFF,** | : |
| | : **CIVIL ACTION NO. 3:11cv1017(VLB)** |
| | : |
| **v.** | : **SEPTEMBER 10, 2012** |
| | : |
| **CITIBANK (SOUTH DAKOTA) N.A** | : |
| **DEFENDANT.** | : |

<u>**MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DKT. #27] MOTION TO**</u>
<u>**DISMISS**</u>

The Defendant Citibank (South Dakota) N.A. ("Citibank") has moved to dismiss the Plaintiff Julie Parola's ("Parola") amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.  In the amended complaint, Parola asserts state law causes of action for breach of contract, fraud, violations of Connecticut's Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat. §§36a-645 *et. Seq.*, and violations of Connecticut's Unfair Trade Practices Act ("CUTPA") Conn. Gen. Stat. §42-110b, *et. Seq.*  For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss.

<u>Factual Allegations</u>

The following facts are alleged in Plaintiff's amended complaint, unless otherwise stated.   Citibank was the originator and holder of Plaintiff's federal student loans administered under the Federal Family Education Loan Program ("FFEL").   [Dkt. #19, Amended Compl., ¶3].  Plaintiff executed a Master Promissory Note ("MPN") for her FFEL loans which incorporates the Higher

1

Education Act ("HEA"), 20 U.S.C. §1070 et seq. and applicable Department of Education regulations. *Id.* at ¶4.

In June of 2009, Parola contacted Citibank to apply for Income Based Repayment ("IBR") which is a repayment program for federal student loans as described in 34 C.F.R. §685.221. *Id.* at ¶5. Citibank suggested that she wait to apply for IBR because "a number of her loans were in a six-month grace period because of her recent graduation from law school." *Id.* at ¶6. Citibank suggested that Parola use an Economic Hardship Deferment ("EHD") "because being a recent graduate working only part-time and studying for the bar, Plaintiff's income was limited and she was unable to make the required minimum monthly payment." *Id.* Parola "followed Citibank's suggestion" that she use EHD for any federal loans held by Citibank in repayment status. *Id.* at ¶7.

In December of 2009, when the grace period for Parola's law school loans was about to expire, she applied for IBR. *Id.* at ¶8. Citibank, in a letter dated January 11, 2010, denied Parola IBR stating that "'[a] portion of your account is presently on an Economic Hardship deferment until 6/19/2010. Please reapply after your deferment has ended." *Id.* at ¶9. Parola alleges that she "had the right to cancel her EHD at anytime, however, Citibank failed to consider Plaintiff's IBR application in December 2009 as an implied request to terminate her June 2009, EHD, thereby resulting in an erroneous denial of IBR." *Id.* at ¶10.

Parola was unable to make the "required payment under the standard repayment option" and so she "applied for EHD for her law school loans"

because IBR was denied *Id.* at ¶11.  Citibank in a letter dated February 23, 2010, denied Parola's application for EHD "stating her monthly income was too great. Citibank instead granted a Debt Burden forbearance" for Parola's law school loans.  *Id.* at ¶12.  In another letter dated February 23, 2010, Citibank denied Plaintiff IBR stating that "your account is presently on a Debt Burden forbearance until December 2, 2010.  Please reapply after your deferment has ended."  *Id.* at ¶13.

Parola alleges that 34 C.F.R. 682.210 states that EHD terminates "when the conditions that qualified the borrower for EHD changes in such a way that the borrower no longer qualifies for EHD." *Id.* at ¶14.  Citibank was aware that she no longer qualified for EHD before denying her IBR application in February 2010.  *Id.* at ¶15.  Parola alleges that Citibank should have terminated her EHD from June of 2009 in February of 2010 to allow her to take advantage of the IBR program.  *Id.* at ¶16.

Parola applied for IBR again in June of 2010 when her EHD ended which was denied because a portion of her account was in forbearance.  *Id.* at ¶¶18-19.

In December 2010, the forbearance of Parola's law school loans expired. *Id.* at ¶20.  Parola further alleges that she knew "it was futile to request IBR and anxious to break the catch-22 created by Citibank, began making payments for her law school loans in January of 2011, paying the amount required under a normal, non-IBR repayment plan." *Id.* at ¶21.  Parola alleges that as a result of Citibank's refusal to grant IBR in June 2001, she was forced to use one of her

three years of EHD.  *Id.* at ¶22.   Parola alleges that Citibank's "denial of IBR was purposeful and malicious, designed to increase the loan balance with direct negative consequences to the Plaintiff."  *Id.* at ¶24.

Citibank sent Parola a letter on February 23, 2010 stating that her entitlement to deferment or forbearance takes priority over IBR.  *Id.* at ¶25.  She further alleges that this statement is an "erroneous policy statement that is not based on any statute or regulation."  *Id.* at ¶26.  Parola contends that "forcing the Plaintiff into EHD and Debt Burden forbearance results in the accrued interest being capitalized which ultimately results in the loan accruing interest at a greater rate than it would have had IBR been granted when requested."  *Id.* at ¶27.  Parola alleges that the "erroneous denial of IBR" also harmed her by delaying the 25 year time limit of the IBR program.  *Id.* at ¶28.

Parola consolidated her federal student loans with the William D. Ford Direct Loan Program in February 2011.  *Id.* at ¶30.   She alleges that Citibank received her payments for her private loan in March and April of 2011, but erroneously applied it to her federal loans.  *Id.* at ¶¶31-32.   Parola contacted Citibank about the mistake but was told that it was her responsibility to contact the Department of Education ("DOE") to have the money returned to Citibank.  *Id.* at ¶33.   Parola then contacted the DOE but was told that it was Citibank who had to contact the DOE.  *Id.*  Parola contacted Citibank after speaking with the DOE and that Citibank refused to contact the DOE.  *Id.* at ¶35.

Parola informed Citibank that she had retained counsel, and supplied Citibank with counsel's name, phone number and address. *Id.* at ¶37.  Parola alleges that "despite knowing that Plaintiff was represented by counsel, [Citibank] continued to contact Plaintiff directly." *Id.* at ¶38.  Citibank sent her no less than three letters stating "you recently informed us that you have retained an attorney to handle your account.  Unfortunately, the information that you provided was incomplete and/or insufficient to reach your attorney or the attorney advised us that they have not been retained to handle this account." *Id.* at ¶39.  Parola supplied her counsel's contact information "each and every time she spoke with Citibank over the course of 5 months." *Id.* at ¶40.

Parola alleges that Citibank breached the contract with her by failing to service her FFEL loans in compliance with the HEA and other applicable DOE regulations "through its refusal to grant IBR when requested in June of 2009 and December of 2009." *Id.* at ¶45.

Parola next alleges that Citibank committed fraud "by its conduct in December 2009 through February 2010" by denying her "IBR stating that IBR could not be granted while Plaintiff's account contained loans in EHD." *Id.* at ¶¶50, 51.  Parola asserts that Citibank knew or should have known that EHD should have been terminated in accordance with 34 C.F.R. §685-210(a)(6)(i) sometime between December 2009 and February 2010. *Id.* at ¶52.  As Citibank falsely told Plaintiff she could not have IBR, Plaintiff, on reliance on Citibank's statements, placed her law school loans in a Debt Burden forbearance." *Id.* at ¶52.  Parola alleges the she was harmed by these false statement because as a

5

result of the Debt Burden forbearance, interest accrued that was capitalized thereby making her loan grow faster than it would have had it been placed in the IBR program.  *Id.* at ¶54.

Parola claims that Citibank committed five CCPA violations.   First, Citibank allegedly violated Conn. Agencies Reg. §36a-647-4(a)(2) by contacting her repeatedly when it knew that she was represented by counsel and had valid contact information for said counsel.   *Id.* at ¶60.  Second, Citibank violated Conn. Agencies Reg. §36a-647-5(5) by continuing to engage Plaintiff in conversation when it knew that she was represented by counsel.  *Id.*  Third, Citibank violated Conn. Agencies Reg. §36a-647-5(14) by refusing to investigate an ongoing dispute. *Id.*   Fourth, Citibank violated Conn. Agencies Reg. §36a-647-6(2)(A) "by falsely representing the character, amount, and legal status of the debt when claiming Plaintiff had missed two payments on her private student loan."  *Id.* Lastly, Citibank violated Conn. Agencies Reg. §36a-647-6(11) by falsely stating that it was Plaintiff's responsibility to contact the DOE to get the money back that Citibank wrongfully sent to the DOE and by refusing to contact the DOE directly to get the money back.  *Id.*

Lastly, Parola alleges that Citibank violated CUTPA for its "breach of contract, fraud, violation of the CCPA, and by denying IBR for erroneous policy reasons not based on any statute or regulation governing the Family Federal Education Loan Program."  *Id.* at ¶63.  Parola alleges that Citibank's acts were "contrary to public policy, and were unfair, immoral, unethical, oppressive and unscrupulous and such as to cause substantial injury to consumers."  *Id.* at ¶64.

Parola asserts that she "sustained an ascertainable loss as a result of Citibank's acts.  Specifically, Plaintiff's loan balance is based on interest that never should have accrued or been capitalized, Plaintiff is two years behind in qualify [sic] for her 25 year discharge, Plaintiff was forced to make payments that were above her means in order to maintain her good credit, such payments being substantially greater than they would have been under the IBR program, and Plaintiff suffers credit damage as a result of Citibank improperly forwarding the payment for her private student loan to the [DOE] and refusing to do anything to correct the problem."  *Id.* at ¶65.

### Legal Standard

   "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

<u>Analysis</u>

i.      **Breach of Contract**

Citibank argues that Parola's breach of contract claim is essentially an impermissible claim for violation of the HEA.  [Dkt. #28, mem. in support of its motion to dismiss, p. 6].  Citibank argues that Parola cannot maintain a claim for violation of the HEA as it is well settled that there is no private cause of action under the HEA.  *Id.*  Indeed, the Second Circuit recently held that the "HEA does not provide student borrowers a private right of action to enforce its provisions." *Sanon v. Dep't of Higher Ed.*, 453 Fed. Appx. 28, 29 (2d Cir. 2011) (*citing Josey v. Sallie Mae, Inc.*, No.09Civ.4403(AJP), 2009 WL 2518643, at *5 & n.8 (S.D.N.Y. Aug. 17, 2009)).

Parola concedes that there is no private right of action under the HEA but argues that she should be permitted to maintain her breach of contract claim on the basis that HEA compliance was a term of her contract with Citibank.  [Dkt. #30, mem. in opp. to motion to dismiss, p. 7].  Although not apparent from the pleadings set forth in the amended complaint, Plaintiff argues that Citibank agreed to comply with the HEA and the regulations controlling IBR in the MPN. *Id.* at 11.  Therefore Parola argues that when Citibank allegedly failed to comply with the regulations regarding IBR, it breached its obligations under the MPN. [1]

"Congress directs the DOE to issue common application forms and promissory notes to be used by FFELP participants.  These common forms include a free application form, master promissory note, and common loan deferment form.  The purpose of the common forms is to standardize the terms and formatting to help applicants understand their loan obligations."  *Chae v. SLM Corp*, 593 F.3d 936, 940 (9th Cir. 2010) (citing 20 U.S.C. §§ 1082(m)(1)-(4)). The Borrower's Rights and Responsibilities section of the MPN which Parola

---

[1] It is well established that a plaintiff "may not amend [his] complaint through [his] opposition." *Rodriguez v. Goetz*, 09-cv-3728, 2010 WL 451032, at *1 n. 1 (S.D.N.Y. Feb. 1, 2010) (declining to consider factual allegations raised in opposition to motion to dismiss); *Space, Inc. v. Simowitz*, 08-cv-2854, 2008 WL 2676359, at *4 (S.D.N.Y. July 8, 2008) (declining to consider "new factual allegations that are not contained in the Complaint.").  Here Parola's allegations raised in her opposition to the motion to dismiss regarding Citibank's alleged breach of the terms of the MPN are not clearly alleged in the amended complaint.  Parola's pleadings therefore likely fail Federal Rule of Civil Procedure 8's requirement that a pleading must state the "factual allegations that are sufficient to give fair notice of what the claim is and the ground upon which it rests." *Andersen News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2010) (internal quotation marks, citations, and alternations omitted).  However, the Court will consider Parola's allegations as the Defendant has briefed the issue and it would be futile to allow her leave to amend her complaint to specifically assert this claim.

executed on July 21, 2005 states in relevant part: "Governing law – loans disbursed under this Master Promissory Note ("MPN") are subject to the Higher Education Act of 1965 as amended (20 U.S.C. 1070 et seq.) and applicable U.S. Department of Education regulations (collectively referred to as the "Act").  Note: Any change to the Act applies to the terms of any loan(s) disbursed on or after the effective date of the change."  [Dkt. #27, Ex. B].

Parola argues that this provision in the MPN obligates Citibank to comply with the IBR regulations and that Citibank's failure to grant her IBR when she requested it in June and December of 2009 constitutes a breach of contract. Parola relies on two cases to support her breach of contract theory.  However, both of these cases are inapposite.  First, Parola argues that in *Brooks v. Sallie Mae, Inc.*, No.3:09-cv-1547(SRU), 2009 WL 4038467 (D. Conn. Nov. 19, 2009), the court held that a state unfair practices act claim was not "undone" by the HEA's lack of a private right of action.  Parola contends that this holding is equally applicable to a breach of contract claim.  [Dkt. #30, p. 7].  However, as Citibank points out the *Brooks* court did not hold that the CUTPA claim was not "undone" by the HEA's lack of private right of action.

In *Brooks*, the plaintiff filed a state superior court action alleging violation of CUTPA based on the defendant's non-compliance with the HEA.  The defendant removed the action from state court and moved to dismiss on the ground that there is no private right of action under the HEA.  The *Brooks* court solely examined whether the defendant had carried its burden to establish federal-question jurisdiction in light of the fact that plaintiff's complaint raised a

single Connecticut state law question.  The *Brooks* court concluded that the HEA did not "confer exclusive jurisdiction on federal courts to resolve disputes concerning administration of student loans" and therefore found that the defendant failed to carry its burden to establish federal jurisdiction as the "mere presence of a federal law defense does not give rise to federal jurisdiction."  2009 WL 4038467, at *2.  The *Brooks* court then remanded the action back to the Connecticut superior court.   Consequently, the *Brooks* court did not consider whether the plaintiff could maintain a cause of action under CUTPA for a violation of the HEA.

Second, Parola points to the Fourth Circuit's decision in *College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005) in which the court held that the plaintiff could maintain a breach of contract claim based upon violations of the HEA.  In *College Loan*, a student loan consolidated lender sued its loan servicers and competitor for breach of contract and tortious interference.  There the plaintiff and defendant entered into a master loan agreement in which the defendant certified that its consolidation loan servicing shall comply in all respects with the HEA.  396 F.3d at 592.  The Fourth Circuit concluded that as parties to the master loan agreement, both defendant and plaintiff "*expressly agreed* to comply with the HEA.  In that context, Sallie Mae's argument that enforcement of the Agreement's terms is preempted by the HEA boils down to a contention that it was free to enter into a contract that invoked a federal standard as the indicator of compliance, then to proceed to breach its duties thereunder

and to shield its breach by pleading preemption.  In this case at least, federal supremacy does not mandate such a result."  *Id.* at 598 (emphasis in the original).

However the facts of *College Loan* are distinguishable from the instant case.  Unlike the master loan agreement in *College Loan* which was negotiated at arms-length by both parties, the MPN is a document drafted by the DOE and its use is mandated by statute.  Neither Citibank nor Parola negotiated or drafted the MPN and therefore neither party expressly agreed to comply with the HEA as was the case in *College Loan*.  Additionally in *College Loan*, the parties expressly invoked the federal standard as an indicator of non-compliance by covenanting that the defendant shall comply in all respects with the HEA.  In the instant case, Citibank was the lender in a federal student loan program which mandated the use of the MPN.  Citibank and Parola did not negotiate the MPN and Citibank did not covenant to comply with the HEA.  Consequently Parola is only entitled to the remedies for breach of the MPN created by the HEA.  As noted above the HEA does not create a private right of action, but instead "permits the Secretary of Education to discharge a loan guaranteed by the Department of Education." *Nehorai v. U.S. Dep't of Educ. Direct Loan*, No.08-cv-920, 2008 WL 1767072, at *1 (E.D.N.Y. Apr. 14, 2008); *see also Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) (concluding that the HEA reserves all enforcement activity to the Secretary of Education) (citing 20 U.S.C. §§ 1070(b), 1082(a)(2), 1082(h)).  Contrary to Parola's contention, the MPN's HEA provision only authorizes the Secretary of Education to pursue an enforcement action for non-compliance.

Thus Parola's recourse is to seek remedial action by the Department of Education.

Citibank aptly argues that the reasoning of the Maryland Court of Appeals on a similar issue underscores this conclusion.  In *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705 (2007), a residential mortgagor brought claims for breach of contact alleging that the mortgage servicer failed to comply with United States Housing and Urban Development's ("HUD") loss mitigation regulations before initiating foreclosure proceedings.  The plaintiff argued that despite the fact that there was no private right of action under HUD, it could rely on a reference to the HUD regulations in a deed of trust to support a state law breach of contract claim. The *Wells Fargo* court considered and distinguished the Fourth Circuit's decision in *College Loan*  holding that even though Wells Fargo voluntarily choose to participate as a lender in the FHA mortgage insurance program, it did not assent to comply with HUD regulations.  398 Md. at 716.  The *Wells Fargo* court reasoned that "the lynchpin of the *College Loan Corp.* court's analysis was that the contractual term binding the parties privately to an otherwise statutory standard of conduct was the product of a negotiation yielding a freely-entered contract.  In the matter before us, Wells Fargo did not participate in negotiations for or drafting of the deed of trust to which it became assignee."  *Id.* at 718.  The *Wells Fargo* court further reasoned that HUD's enforcement scheme which provides for a civil money penalty to be levied by the Secretary of HUD "comports with the notions that the regulations enacted pursuant to the NHA were intended to govern the relationship between the mortgagee and the government rather than,

as Neal would have it, the mortgagee and the mortgagor." *Id.* at 719.  This Court agrees that the MPN like the deed of trust in *Wells Fargo* was not the product of a negotiation yielding a freely-entered contract and that the regulations and enforcement scheme enacted pursuant to the HEA were intended to govern the relationship between the lender and the government rather than the borrower and the lender.   The Court therefore finds that Parola has failed to state a breach of contract claim that is plausible as the provision of the MPN Parola relies is not a covenant for compliance by the lender, nor is the MPN the product of a negotiation yielding a freely-entered contract as was the case in C*ollege Loan*.

Assuming arguendo that Parola could maintain a breach of contract claim on the basis of the MPN, Parola has also failed to plead sufficient factual matter to state a claim to relief that is plausible on its face.  Parola alleges that Citibank breached the MPN when it denied her IBR request in June of 2009.  However Parola alleges that in June of 2009 she contacted Citibank about applying for IBR and Citibank suggested that she wait until after the 6-month grace period on her loans expired and instead apply for an EHD.   [Dkt. #19, Amended Compl., ¶6].  Parola alleges that she "followed Citibank's suggestion" that she use EHD for her federal loans held by Citibank. *Id.* at ¶7.  Citibank cannot be liable for a breach of contract where Parola admittedly did not pursue her application for IBR in June of 2009 and instead voluntarily followed Citibank's suggestion that she apply for EHD.  Further, Parola cites no facts, MPN provision or law which would impose upon Citibank the duty to take it upon itself to review Parola's loan, evaluate her eligibility for various borrower classifications and advise her of her options,

14

much less the most beneficial option as Parola alleges Citibank failed to do. Therefore, Parola has not plausibly alleged that Citibank breach the MPN by refusing to grant her IBR in June of 2009.

Parola also alleges that Citibank breached the MPN when it denied her IBR request in December of 2009 on the basis that a portion of her account was on EHD. *Id.* at ¶¶8-10. Parola alleges that she "had the right to cancel her EHD at anytime, however, Citibank failed to consider Plaintiff's IBR application in December 2009 as an implied request to terminate her June 2009, EHD, thereby resulting in an erroneous denial of IBR." *Id.* at ¶10. However since Parola admittedly never made a request to terminate her EHD, she has failed to plausibly allege that Citibank had a duty to act as her advisor and failed to plausibly allege that Citibank breached the MPN when it failed to do something that she admittedly never asked it to do. Parola has therefore failed to plead sufficient factual content to allow the Court to draw the reasonable inference that Citibank breached its obligations under the MPN.

Lastly, the Court notes that Parola's loans could not be subject to the IBR program as the IBR program came into existence years after her loans were disbursed in 2005. *See In re Stevenson*, 463 B.R. 586, 592 n.5 (Bkrtcy. D. Mass. 2011) ("The IBR became available under the Ford Program as of July 1, 2009"). The MPN expressly provides that "[a]ny change to the Act applies to the terms of any loan(s) disbursed on or after the effective date of the change." [Dkt. #27, Ex. B]. Consequently, pursuant to the express terms of the MPN, the change to the Act establishing the IBR program did not apply to loans such as Parola's

disbursed prior to the effective date of that change in 2009.  For all these reasons, the Court dismisses Parola's breach of contract claim.

ii.      Fraud

Citibank argues that Parola has failed to plead her claim of fraud with particularity as required by Federal Rule of Civil Procedure 9(b).  Parola has alleged that Citibank committed fraud when it denied her IBR application "stating that IBR could not be granted while Plaintiff's account contained loans in EHD." [Dkt. #19, Amended Compl., ¶51].  Parola further alleges that Citibank knew or should have known that EHD should have been terminated in accordance with 34 C.F.R. §685-210(a)(6)(i) sometime between December 2009 and February 2010.  *Id.* at ¶52.  Citibank argues that Plaintiff failed to identify who made these allegedly false statements and when these statements were made.  Parola argues that she met Rule 9(b)'s requirements because she relies on the letter Citibank sent dated January 11, 2010 in which they denied her IBR application on the basis of her ongoing EHD as the basis for her fraud claim.  Citibank further argues that Parola has failed to set forth a single allegation that this alleged statement was false or that it knew such statement was false.

"The essential elements of an action in common law fraud ... are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury ... Under a fraud claim of this type, the party to whom the false

representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance ... In contrast to a negligent representation, [a] fraudulent representation ... is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it ... This is so because fraudulent misrepresentation is an intentional tort." *Sturm v. Harb Development, LLC*, 298 Conn. 124, 142 (2010) (internal quotation marks and citations omitted).

"To plead with particularity in accordance with Rule 9(b), the complaint must: (1) specify the statements alleged to be fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gabrielle v. Law Office of Martha Croog*, No.3:10-cv-1798(WWE), 2012 WL 460264, at *4 (D. Conn.  Feb. 9, 2012) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).  "Rule 9(b) provides that '[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally.' However, to safeguard a defendant's reputation from unsubstantiated charges of wrongdoing or a strike suit, the Second Circuit has instructed that plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  "The 'strong inference of fraud' may be established by either alleging facts to show that a defendant had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (citing *James F. Canning Agency v. Nationwide Ins. Co. of America*, No.3:09-cv-1413(MRK), 2010 WL 2698292 at *2 (D. Conn. Mar. 10, 2010)).

The "purpose of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response." *United States ex rel. Tiesinga v. Dianon Sys., Inc.*, 231 F.R.D. 122, 123 (D.Conn. 2005)(quotation marks and citation omitted).

The Court agrees that Parola has failed to allege sufficient factual matter to state a claim to relief for fraud that is plausible on its face.  First, Parola had failed to allege facts demonstrating that Citibank's statement that her IBR application was denied because a portion of her account was on EHD was false.  As discussed above, Parola has alleged that Citibank should have treated her IBR application in December 2009 as an implied request to terminate her June 2009 EHD.  [Dkt. #19, Amended Compl., ¶10].  Consequently, Citibank's statement that a portion of her account was on EHD could not be false as Parola had admittedly not requested that Citibank terminate her EHD.  Parola argues that this statement is false because Citibank was required by 34 C.F.R. § 693.210(a)(6) to terminate her EHD "upon learning that Plaintiff no longer qualified for EHD."  [Dkt. #30, Mem. in Opp. to Motion to dismiss, p. 14].  However, Parola has failed to allege any facts with particularity that Citibank knew or should have known pursuant to HEA regulations that she no longer qualified for EHD.  Parola has only conclusorily cited to the IBR regulation to support her allegation of Citibank's knowledge.   In addition, Parola has also conclusorily alleged that Citibank's "denial of IBR was purposeful and malicious" and therefore she has failed to plead with particularity any facts that give rise to a strong inference of fraudulent intent as required under Rule 9(b).  [Dkt. #19, Amended Compl., ¶24].   Parola has

therefore failed to plead sufficient factual content to allow the Court to draw the reasonable inference that Citibank committed fraud when it denied her IBR application in January 2010.  For these reasons, the Court dismisses Parola's fraud claim.

### iii.   CCPA Violations

Citibank argues that Parola has failed to plausibly allege that Citibank's conduct violated CCPA regulations.   Citibank also argues that a creditor can only be liable under the CCPA for "abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect a debt."  [Dkt. #33, p. 7-8].  Conn. Gen. Stat. §36a-646 provides that "[n]o creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt." *Id.*  "The Commissioner of Banking may adopt regulations to specify 'those acts which are deemed to be in violation of Section 36a–646.'"  *Citibank v. Bennet*, No.CV106002153S, 2011 WL 3427224, at *[] (Conn. Super. Ct. July 14, 2011) (quoting Conn. Gen. Stat. §36a-647(a)).   Parola alleges that Citibank violated five regulations promulgated under the CCPA which the Court will examine in turn.

### a.  Regs., Conn. Stat. Agencies  §36a-647-4(a)(2)

Connecticut state agency regulations section 36a-647-4(a)(2) promulgated by the Commissioner of Banking provides that "creditor shall not communicate with a consumer debtor or consumer debtor agent *in connection with the collection of any debt*... [i]f the creditor knows the consumer debtor or consumer

debtor agent is represented by an attorney with respect to such debt and has knowledge of such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the creditor, not to exceed thirty days after such communication, unless the attorney consents to direct communication with the consumer debtor or consumer debtor agent, provided that a creditor may send to a consumer debtor or consumer debtor agent normal periodic billing statements which do not contain any message that violates the provisions of section 36a-647-5 or 36a-647-6 of the Regulations of Connecticut State Agencies." Regs., Conn. Stat. Agencies §36a-647-4(a)(2). (emphasis added).  Parola does allege that she informed Citibank that she had retained counsel and supplied them with her counsel's name, phone number and address.  *See* [Dkt. #19, Amended Compl., ¶37].   However, Parola has failed to allege that Citibank communicated with her "in connection with the collection of any debt" despite its knowledge that she was represented.  Regs., Conn. Stat. Agencies §36a-647-4(a)(2).  Instead, Parola alleges that Citibank contacted her to let her know that the information she provided regarding her retained counsel was incomplete or insufficient to reach the attorney. *Id.* at ¶39.  Consequently, Citibank did not contact Parola to collect the debt.  Instead, it contacted her by letter on three occasions solely for the express purpose of obtaining her attorney's correct contact information so that it could contact her attorney to discuss collection of the debt.  To hold otherwise would deprive a lender of its only avenue to collect its debt.  Parola has failed to allege that Citibank contacted her in connection with the collection of the debt as is required for a violation of

Regs., Conn. Stat. Agencies §36a-647-4(a)(2).  The Court therefore dismisses Parola's Regs., Conn. Stat. Agencies §36a-647-4(a)(2) claim.

### b.  Regs., Conn. Stat. Agencies §36a-647-5(5)

Connecticut state agency regulations section § 36a–647–5 provides that "[a] creditor shall not engage in any conduct the natural consequence of which to a reasonable person would be to harass or abuse such person in connection with the collection of a debt.   A creditor shall not intentionally engage in any conduct which the creditor knows would harass or abuse any person.   Without limiting the general application of the foregoing, the regulation sets forth conduct which violates this section."  Conn. Agencies Reg. § 36a–647–5.  "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously if the natural consequence of such action to a reasonable person is annoyance, abuse or harassment" is a violation of that regulation.  Regs., Conn. Stat. Agencies §36a-647-5(5).  Parola alleges that Citibank violated §36a-647-5(5) by "continuing to engaged Plaintiff in conversation when it knew that Plaintiff was represented by counsel." [Dkt. #19, Amended Compl., ¶60].   However, Parola has failed to allege that Citibank caused her telephone to ring or engaged her in a telephone conversation repeatedly as is required for a violation of §36a-647-5(5).  Parola only alleges that Citibank sent her three letters regarding their inability to contact her retained counsel.  *Id.* at ¶39.  A creditor's ability to communicate with a debtor is not wholly restricted after the creditor notifies the creditor that he or she is represented by counsel.  The debtor is obligated to inform the creditor of the means by which the creditor can contact his or her

attorney.  The Connecticut regulations provide that "[i]f the creditor knows the consumer debtor or consumer debtor agent is represented by an attorney with respect to such debt and has knowledge of such attorney's *name and address*, *unless the attorney fails to respond within a reasonable period of time to a communication from the creditor, not to exceed thirty days after such communication*, unless the attorney consents to direct communication with the consumer debtor or consumer debtor agent, provided that a creditor may send to a consumer debtor or consumer debtor agent normal periodic billing statements which do not contain any message that violates the provisions of § 36a–647–5 or § 36a–647–6 of the Regulations of Connecticut State Agencies." Regs., Conn. Stat. Agencies §36a-647-4.  (emphasis added).  The regulation permits communication by a creditor with a debtor who has retained an attorney both to obtain the attorney's contact information and if the attorney fails to respond to the creditor's interties after the debtor has furnished the creditor with the attorney's contact information.  In addition, Parola has failed to allege sufficient factual content to allow the Court to draw a reasonable inference that the natural consequence of Citibank's alleged communications to Parola would be annoying, abusive or harassing to a reasonable person.  The Court therefore dismisses Parola's Regs., Conn. Stat. Agencies  §36a-647-5(5) claim.

c.  Regs., Conn. Stat. Agencies  §36a-647-5(14)

Another example of conduct that violates § 36a–647–5 is "[r]efusing to make a reasonable effort to determine the validity of a debt the consumer debtor disputes unless such a verification has already been made."  Regs., Conn. Stat.

Agencies §36a-647-5(14) provides   Parola alleges that Citibank violated this regulation by refusing to investigate an ongoing dispute. [Dkt. #19, Amended Compl., ¶60].   Parola does not now nor does she allege that she ever disputed the debt.   Although not clearly alleged in her undifferentiated amended complaint, consisting of 43 numbered paragraphs all of which are incorporated by reference as the factual basis for each of her claims, Parola claims that Citibank misapplied to her federal loans two payments she made on her private loans and refused to contact the DOE to rectify this alleged error.  *Id.* at ¶¶ 31-35. Citibank argues that §36a-647-5(14) is not relevant because Parola has not disputed the validity of the debt but has instead taken issue with the misapplication of two payments towards her debts.

This Court agrees that Parola has failed to allege that she has disputed the validity of the debt which gave rise to Citibank's obligation to investigate the dispute and verify the debt.  Parola only alleges that she informed Citibank that two payments were misapplied to her federal loans and does not dispute that her debt was invalid.   Connecticut courts have recognized that the "CCPA parallels that FDCPA in almost all respects."  *Cuda & Assocs., LLC v. Yuchnuik*, No.CV095013066, 2012 WL 164435, at *6 (Conn. Super. Ct. Jan. 3, 2012) (collecting cases).  In addition, "there are no Connecticut decisions cited to or found by the court distinguishing the CCPA's verification requirement from that of the FDCPA."  *Id.*

Under the FDCPA, courts have held that "a debt collector need not do much to verify a debt ... Indeed ... it appears as though every court to have

23

examined the issue has held that the verification provided here—confirmation of the amount of the debt and the identity of the creditor, which is then relayed to the debtor—is sufficient.. [T]his provision of the FDCPA is not intended to give a debtor a detailed accounting of the debt to be collected.  Instead, [c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Id.* at 5 (internal quotations marks and citations omitted).  Parola is not alleging that Citibank is dunning the wrong person or attempting to collect a debt already paid.   Moreover, verification consisting of a confirmation of the amount of her debt by Citibank would not rectify the injury that Parola is seeking to remedy.   Consequently, this Court agrees that Regs., Conn. Stat. Agencies §36a-647-5(14) is not relevant to Parola's allegations that Citibank misapplied two payments to her federal loans.  The Court therefore dismisses Parola's Regs., Conn. Stat. Agencies §36a-647-5(14) claim.

### d.  Regs., Conn. Stat. Agencies  §36a-647-6(2)(A)

Regs., Conn. Stat. Agencies  §36a-647-6 provides that a "creditor shall not use any fraudulent, deceptive or misleading representation, device or *practice in connection with the collection of any debt*.  Without limiting the general application of the foregoing, the following conduct is a violation of this section." *Id.* (emphasis added).  Regs., Conn. Stat. Agencies  §36a-647-6(2)(A) provides one example of conduct that violates §36a-647-6: the false representation of the "character, amount or legal status of any debt."  *Id.*  Parola alleges that Citibank violated this regulation by falsely representing the character, amount and legal

24

status of the debt when claiming that she had missed two payments on her private student loan.  [Dkt. #19, Amended Compl., ¶60].   Parola further alleges that Citibank admitted its mistake, refused to do anything about it, and continued to report the late payments on her consumer credit report.[2]  *Id.* at ¶¶33, 36.  However, Parola fails to allege that Citibank made this allegedly false representation in connection with the collection of a debt as required under §36a-647-6.  Parola only alleges that Citibank reported the late payment on her consumer credit report and has not alleged that Citibank has attempted to collect the debt.  The heart of Parola's claim is that Citibank engaged in improprieties in connection with the administration of her debt as opposed to improprieties in connection with the collection of her debt.  Financial institutions, especially one the size of Citibank, report voluminous amounts of information both favorable and unfavorable to credit reporting agencies routinely separate and distinct from their debt collection activity to collect debts.  The Court therefore dismisses Parola's Regs., Conn. Stat. Agencies §36a-647-6(2)(A) claim.

   e.  Regs., Conn. Stat. Agencies  §36a-647-6(11)

   This regulation prohibits "[t]he use of any other false representation or deceptive means to collect or attempt to collect any debt or to obtain information

---

[2] **The Court notes that Parola has not asserted a cause of action under the Fair Credit Reporting Act with respect to her allegations that Citibank made false statements on her credit report.  However, Parola would not have a private right of action to assert such a cause of action if she had done so.  *See Longman v. Wachovia Bank, N.A.*, No.3:09-cv-01669(JCH), 2011 WL 4352102, at *3 (D. Conn. Sept. 16, 2011) (holding that "Congress has not provided a private right of action to challenge a violation of the duties required of a furnisher under 15 U.S.C. §1681s-2(a)).**

concerning a consumer debtor or consumer debtor agent."  Regs., Conn. Stat. Agencies §36a-647-6(11).   Parola alleges that Citibank violated this regulation by falsely stating that it was Plaintiff's responsibility to contact the DOE to get the money back that Citibank wrongfully sent to the DOE and by refusing to contact the DOE directly to get the money back.  [Dkt. #19, Amended Compl., ¶60].   This claim fails for the same reasons as Parola's §36a-647-6(2)(A) claim fails.  Parola has not alleged that Citibank made these allegedly false representations or failed to correct them in connection with its debt collection activity.  The Court therefore dismisses Parola's Regs., Conn. Stat. Agencies §36a-647-6(11) claim.

   iv.    CUTPA

   Parola's CUTPA claims are expressly predicated on her breach of contract, fraud and CCPA violation claims.  [Dkt. #19, Amended Compl., ¶63].   Since the Court has dismissed these claims, Parola's corresponding and contingent CUTPA claims must likewise be dismissed.   However, Parola has also alleged that Citibank violated CUTPA by "denying IBR for erroneous policy reasons not based on any statute or regulation governing the Family Federal Education Loan Program." *Id.* at ¶63.

   "[T]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . and [plaintiff suffered] ascertainable loss of money or property as a result of the defendant's acts or practices."   *Neighborhood*

*Builders, Inc. v. Town of Madison*, 294 Conn. 651, 657 (2010) (quoting CONN. GEN. STAT. § 42-110b(a); CONN. GEN. STAT. § 42-110g(a)).

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]." *Hoffnagle v. Henderson*, No.CV020813972S, 2003 WL 21150549, at *8 (Conn. Super. Ct. April 17, 2003) (internal quotation marks and citations omitted).  "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three…Thus a violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy."  *Id.* (internal quotation marks and citations omitted).

"The ascertainable loss requirement is a threshold barrier that limits the class of persons who may bring a CUTPA action seeking either actual damages . . . .  Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation."  *Neighborhood Builders, Inc.*, 294 Conn. at 657 (2010) (*quoting Artie's Auto Body, Inc. v. Hartford*

*Fire Ins. Co.*, 287 Conn.  208, 217-18 (2008)).  "An ascertainable loss is a loss that is capable of being discovered, observed or established.  The term loss . . . has been held synonymous with deprivation, detriment and injury.  To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount."  *Artie's Auto Body, Inc.*, 287 Conn. at 218 (citations and internal quotation marks omitted).  But in order for a loss to be ascertainable it must be "measurable even though the precise amount of the loss is not known."  *Id.*  "A plaintiff also must prove that the ascertainable loss was caused by, or 'a result of,' the prohibited act."  *Id.* (quoting Conn. Gen. Stat. §42-110(g) (a)).  "When plaintiffs seek money damages, the language 'as a result of' in §42-110(g)(a) 'requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff.... [P]roximate cause is [a]n actual cause that is a substantial factor in the resulting harm.... The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act.'"  *Id.* (quoting *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997)).

Parola argues that Citibank's conduct in denying her IBR offends the public policy as it has been established by the HEA.  Parola alleges that in June of 2009 she followed Citibank's advice to not apply for IBR and instead use EHD.  [Dkt. #19, Amended Compl., ¶¶5-7].  Consequently, Citibank did not deny Parola IBR in June 2009 and therefore these allegations cannot be the basis for a CUTPA claim.  Parola also alleges that Citibank improperly denied her IBR application from December 2009 when they failed to treat her application as an implied request to

terminate her EHD.  *Id.* at ¶¶ 8-10.  However as discussed above, since she admittedly did not make a request to terminate her EHD, Citibank cannot have violated CUTPA by failing to do something it was neither asked to do nor shown to have had a legal obligation to do.

Parola further alleges that Citibank denied two additional IBR requests because a portion of her account was on a Debt Burden forbearance and was instructed to reapply when the forbearance or deferment period had ended.  *Id.* at ¶¶ 12-13, 18-20.  She does not claim that she took any steps to terminate the forbearance or deferment period nor does she cite any provision of the MPN or any other provision which either authorizes or obligated Citibank to counsel her or act on her behalf.  She acknowledges that when the forbearance period on her loans expired she did not reapply for IBR.  *Id.* at ¶¶20-21.  Parola contends that "Citibank's statement that deferments and forbearances have priority over IBR is an erroneous policy statement that is not based on any statute or regulation" and that Citibank's "policy to give priority to deferment and forbearance in order to deny IBR to Plaintiff and other borrowers is simply a way for Citibank to profit from its position of power over Plaintiff."  *Id.* at ¶¶26-27.

Here, Parola has failed to plausibly allege that Citibank's denial of IBR on the basis that a portion of her loans were in EHD or forbearance offends the public policy of the HEA.   Although it appears that a borrower can apply for IBR during a period of EHD or any other type of deferment or forbearance, a borrower would not begin making payments under IBR until the end of the deferment or forbearance period. http://studentaid.ed.gov/sites/default/files/income-based-

repayment-common-questions.pdf (last visited 8/28/2012).  Parola has alleged that she failed to reapply for IBR as Citibank instructed at the end of the deferment or forbearance period.  Since she would not have begun making payments under the IBR until the deferment or forbearance periods ended, Citibank's denial and instruction to reapply at the end of those periods could not have offended the public policy of the HEA as the public policy of the HEA provides that repayments can only begin after deferment or forbearance has ended.

Lastly, the Court notes that Parola has failed to establish that she suffered an ascertainable loss caused by or the result of Citibank's denial of her IBR applications on the basis that a portion of her account was in EHD or forbearance.  Parola has alleged that she suffered an ascertainable loss because her "loan balance is based on interest that never should have accrued or been capitalized, Plaintiff is two years behind in qualify [sic] for her 25 year discharge, Plaintiff was forced to make payments that were above her means in order to maintain her good credit, such payments being substantially greater than they would have been under the IBR program."  [Dkt. #19, Amended Compl., ¶65].  Parola is claiming that she suffered an ascertainable loss on the basis of the savings she would have gained had she participated in the IBR program.  However since Parola alleges that she choose not to reapply for IBR when her deferment or forbearance period ended and failed to initiate an early termination of that period, she cannot demonstrate that this loss was proximately caused by Citibank's conduct as opposed to her own conduct in failing to reapply as

instructed.  Consequently, Parola has failed to state a plausible claim for relief under CUTPA.  The Court therefore dismisses Parola's CUTPA claim.

### Conclusion

Based upon the above reasoning, Defendant's [Dkt. #27] motion to dismiss is GRANTED as to all of Plaintiff's claims.  The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 10, 2012